**\*\*NOT FOR PUBLICATION\*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
:                 Civil Action No. 17-5607 (FLW)(LHG)
SHARON TAFARO, individually and as   :
Guardian ad Litem for minor G.T.,    :
:                 **OPINION**
Plaintiffs,    :
:
v.                    :
:
SIX FLAGS GREAT ADVENTURE, LLC, :
*et al.*,                            :
:
Defendants.   :
_____ :

**WOLFSON, United States District Judge**:

 Before the Court, in this case involving Plaintiff Sharon Tafaro's ("Plaintiff") allegations of injuries sustained by her minor daughter, G.T., while riding a rollercoaster in the theme park of Defendant Six Flags Great Adventure, LLC ("Six Flags"), are (1) the motion of Six Flags for partial dismissal of Plaintiff's Amended Complaint; (2) the motion of Defendants Intamin; Intamin, Ltd.; and Interride, LLC (collectively "Intamin"), for dismissal of all claims in the Complaint as raised against Intamin; and (3) the Cross-Motion of Plaintiff for leave to file a Second Amended Complaint to replead her claim against Intamin under the New Jersey Product Liability Act, N.J.S.A. 2A:58C ("NJPLA"). For the reasons set forth below, Defendants Six Flags' and Intamin's Motions are granted, and Plaintiff's Cross-Motion is denied. Plaintiff may, however, within thirty days, file a renewed motion seeking leave to file a Second Amended Complaint, consistent with the rulings in this Opinion.

I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff filed her Original Complaint in this action in the Superior Court of New Jersey, Law Division, Ocean County, on June 19, 2017. Plaintiff filed her Amended Complaint in that court on July 27, 2017, naming Six Flags, Intamin, Rocky Mountain Construction, and John Does 1-100 as Defendants. On July 31, 2017, Defendant Six Flags removed the matter to this Court, pursuant to 28 U.S.C. § 1441, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. The parties do not dispute that complete diversity of citizenship exists among the parties, that the amount in controversy requirement is satisfied, and that this Court's exercise of jurisdiction is otherwise proper.

In her Amended Complaint, Plaintiff alleges that Intamin manufactured, designed, and installed the El Toro rollercoaster ride on the premises of Defendant Six Flags' Great Adventure theme park in Jackson, New Jersey. Amended Complaint ("Am. Compl."), ¶¶ 4-5. Plaintiff further alleges that Defendant Rocky Mountain Construction Company participated in the construction of El Toro. *Id.* at ¶ 10. On July 12, 2016, minor G.T. paid for admission to Six Flags' theme park, rode El Toro, allegedly suffered serious, debilitating injuries, and was permanently disabled as a result. Plaintiff brings five causes of action to recover for those injuries.

In Count I of the Amended Complaint, Plaintiff brings a claim against all Defendants under the NJPLA, alleging that El Toro was defective in its design and manufacture, as well as in the warnings provided to its riders, and that G.T. was injured as a result of those defects. *Id.* at ¶¶ 14-20. In Count II, Plaintiff brings a claim against all Defendants for common law negligence, alleging that El Toro was negligently and improperly maintained, leading to G.T.'s injuries. *Id.* at ¶¶ 21-22. In Count III, Plaintiff brings a claim against all Defendants for common law

negligence, alleging that El Toro was negligently and improperly operated. *Id.* at ¶¶ 23-25. Count IV is confusingly pleaded, but it appears that, therein, Plaintiff seeks to bring a claim against all Defendants for failure to comply with the Carnival–Amusement Rides Safety Act ("the Safety Act"), *N.J.S.A.* 5:3–31 to 59, Am. Compl., ¶¶ 26-32, and against Six Flags for fraudulent concealment for failure to undertake an investigation into, and keep proper documentation of, Plaintiff's injuries sustained while riding El Toro. *Id.* at ¶¶ 33-36. In Count IV, Plaintiff also seeks to recover for the infliction of severe emotional distress, *id.* at ¶ 37, and seeks an award of punitive damages against all Defendants, *id.* at ¶ 38. In Count V, Plaintiff brings a claim against all Defendants for loss of consortium, alleging that she has been deprived of the services of her daughter, G.T., as a result of the injuries G.T. allegedly sustained while riding El Toro. *Id.* at ¶¶ 39-41.

On August 1, 2017, Defendant Six Flags moved to partially dismiss the Amended Complaint, arguing (i) that Plaintiff's Count I NJPLA claim must be dismissed as raised against Six Flags because Six Flags is not a product manufacturer, distributor, or seller subject to liability under the statute, and (ii) that Plaintiff's Count IV claim for failure to comply with the Safety Act, fraudulent concealment, intentional or negligent infliction of emotional distress, and punitive damages, should be dismissed for failure to state a claim. Plaintiff opposed the motion. On December 12, 2017, Defendant Intamin filed a separate motion to dismiss the Complaint. Intamin moves to dismiss (i) Plaintiff's Count I NJPLA claim as inadequately pleaded; and (ii) Counts II, III, IV, and V as not properly brought against Defendant Intamin, subsumed under the NJPLA, and/or inadequately pleaded.

On December 28, 2017, Plaintiff opposed Defendant Intamin's Motion and cross-moved for leave to file a Second Amended Complaint to attempt to remedy the pleading deficiencies of

her Count I NJPLA claim against Defendant Intamin. Intamin opposed Plaintiff's Cross-Motion as futile, on January 22, 2018. All three motions are now fully briefed and before the Court for consideration.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In sum, under the current pleading regime, to determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within the Third Circuit

engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the reviewing court "must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citations and quotations omitted). Finally, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citations, quotations, and brackets omitted). This last step of the plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

III. Analysis

The Court first considers Defendant Six Flags' motion to dismiss Counts I and IV and then proceeds to consideration of Intamin's motion to dismiss all claims against it in the Amended Complaint.

A.  Count I, NJPLA Claim Against Six Flags

Six Flags moves to dismiss Count I of the Amended Complaint, which alleges claims sounding in product liability, on the grounds that all such claims are subsumed under the NJPLA and that Six Flags, as an amusement park owner and operator, is not a manufacturer, distributor, or "seller of a product" subject to liability under that statute. In opposition, Plaintiff advocates for a broader definition of "seller of a product," encompassing Six Flags, but does not appear to dispute that Six Flags is not a manufacturer or distributor of El Toro.

Courts that have considered the boundaries of the definition of "product seller" under the NJPLA are unanimous in their conclusion that an amusement park owner and operator — and

indeed Six Flags in particular — is not a manufacturer, distributor, or seller of the rides and attractions to which it sells access. *Crowley v. Six Flags Great Adventure*, No. 3:14-CV-2433-BRM-TJB, 2017 WL 1836155, at *7 (D.N.J. May 8, 2017) ("[a]musement park owners do not constitute manufacturers [or] sellers of the product"); *J.Z. v. Six Flags Great Adventure, LLC*, No. CV 16-3621 (MLC), 2016 WL 5419420, at *3 (D.N.J. Sept. 28, 2016) (same); *Morgan v. Six Flags Great Adventure, L.L.C.*, No. A-2547-11T2, 2013 WL 2300979, at *1 (N.J. Super. Ct. App. Div. May 28, 2013) (affirming trial court determination that Six flags was not a proper defendant under the NJPLA because it "did not design, manufacture, or sell the ride, but merely sold licenses for admissions to its premises"); *Doerflein v. Six Flags Great Adventure*, No. A-0522-04T2, 2006 WL 392980, at *3 (N.J. Super. Ct. App. Div. Feb. 22, 2006) (explaining that NJPLA definition of product seller explicitly excludes entities like Six Flags).

In reaching their decisions, each of these courts was guided by the same statutory language. Under the NJPLA, only "[a] manufacturer or seller of a product shall be liable" for injuries caused by a product, which is defectively designed, defectively manufactured, or fails to contain adequate warnings. N.J.S.A. § 2A:58C-2. A "seller of a product" or "product seller," as defined under the Act, does not include "a provider of professional services in any case in which the sale or use of a product is incidental to the transaction and the essence of the transaction is the furnishing of judgment, skill or services." *Id.* § 2A:58C-8. In determining whether amusement park owners and operators are "product sellers" under the Act, courts are therefore called upon to rule whether the rides and attractions at issue are incidental to the defendant's provision of amusement services. Beginning with *Doerflein*, every court to have considered the question has found that the products at issue —various rides and attractions— are indeed

incidental to the amusement parks' provision of services to their customers. This Court agrees with the reasoning of those decisions and adopts it in this case.

In *Doerflein*, for example, the New Jersey Appellate Division reasoned by analogy to a series of other cases in which the distinction between service providers and product sellers began to take shape. The court explained:

> As we have recently decided, a trucking company is not liable as a seller of a tire it sent for retreading, *see Becker v. Tessitore,* 356 *N.J. Super.* 233, 235, 812 A.2d 369 (App. Div. 2002), a motel owner is not liable to a guest for a defective cooking utensil supplied in the motel room, *see Ranalli v. Edro Motel Corp.,* 298 *N.J. Super.* 621, 624–25, 690 A.2d 137 (App. Div. 1997), and a bowling alley operator is not liable to a patron injured by a bowling ball supplied to that patron by the operator of the bowling alley, *see Dixon v. Four Seasons Bowling Alley, Inc.,* 176 *N.J. Super.* 540, 546–47, 424 A.2d 428 (App. Div. 1980). In each of these instances, the entity provided a service which incidentally included the defective product. In each of these matters, we rejected the argument that the entity fell within the definition of a seller. We find no ground in this record on which to reach a contrary conclusion.

*Doerflein*, 2006 WL 392980, at *3. The *Doerflein* court thereby directly built upon and expanded earlier reported precedents in which the Appellate Division had explained, in reviewing many of the same prior decisions, that "[i]n each case, the owner of the defective item was engaged in a larger business enterprise to which the item was only incidental. The owner was not engaged in commercially selling a defective product to consumers and, hence, holding the owner strictly liable would not benefit the public by exerting pressure to make the product safer." *Becker*, 356 N.J. Super. at 250–51. This Court agrees, and finds that Six Flags was not engaged in the sale of El Toro or comparable rollercoasters, but, rather, operated and sold access to the theme park, a larger business enterprise, at which El Toro was located, and to which the provision of El Toro for customer use was only incidental.

In opposition, Plaintiff responds that the New Jersey Supreme Court's decision in *In re Lead Paint Litig.*, 191 N.J. 405 (2007), compels a different result. In that case, the New Jersey

Supreme Court held that the distribution of lead-based paint products did not constitute actionable conduct for the purposes of a public nuisance action and that local government entities' claims against manufacturers and distributors of lead-based paint constituted product liability claims and did not fall outside the scope of the Product Liability Act by virtue of the environmental tort exception. *Id.* at 409. Plaintiff argues, without citing to any specific section of the New Jersey Supreme Court's opinion, that "the Court stated that under the New Jersey Product Liability Act, a product's seller is any person who in the course of a business, conducted for that purposes [sic], sells, distributes, leases, installs, prepares, assembles, a manufacturers' product in accordance with the manufacturers [sic] plan, intention, design, specification or formulations or blends, packages, labels, markets, repairs, maintains or otherwise is involved in placing a product in a line of commerce." ECF No. 5, p. 2-3. I have been unable to locate any support in *In re Lead Paint* for this proposition, a task made all the more difficult by Plaintiff's failure to provide a proper citation to that case in briefing. Moreover, the defendants in *In re Lead Paint* were clearly *the manufacturers and distributors* of the lead paint products themselves, not, as would be comparable to the facts of this action, lessors of the facilities painted with the products or other service providers employing the products on their premises. Plaintiff goes on to argue, without legal support, that *Morgan* and *Crowley* are wrongly decided. In doing so, Plaintiff does not even attempt to distinguish or explain the statutory language creating the exclusion from NJPLA liability of service providers under which all of *Morgan*, *Crowley*, and the earlier cases upon which they relied, were decided.

There can be no doubt that the interpretation of "product seller" upon which *Doerflein* and its progeny relied remains the law in the State of New Jersey. Just a few months ago, the New Jersey Appellate Division, in a case closely analogous to the one at bar, again applied the

same reasoning in dismissing the NJPLA claim of a gym membership holder against the gym operator for injuries allegedly caused by one of the gym's exercise machines.

> Similarly, plaintiff's use of the hack squat machine was incidental to his use of the HealthQuest facility. Plaintiff's contention that his hack squat use was not incidental lacks support. He provides no support for his assertion that "the average consumer" joins fitness centers "for the heavy equipment." Furthermore, plaintiff's attempt to differentiate "immovable, heavy [gym] equipment" from bowling balls puts form over substance.

> HealthQuest did not manufacture, sell, or distribute the subject hack squat machine. Plaintiff's argument that HealthQuest became a product seller because it leases its equipment to members lacks merit. Accordingly, HealthQuest is not subject to liability under New Jersey's Product Liability Act, *N.J.S.A.* 2A:58C–1 to –11.

*Leka v. Health Quest Fitness*, No. A-2213-15T4, 2017 WL 4818886, at *3 (N.J. Super. Ct. App. Div. Oct. 26, 2017). The *Leka* court was not persuaded by the plaintiff's argument that the fact that a primary motivation of customers who belong to a gym is to make use of the machinery located there should render the gym's permanent equipment more than incidental to the gym's business operation. *Id.* Plaintiff has made the same case here, noting that attractions like El Toro are the reason that customers attend Defendant Six Flags' amusement park. As in *Leka*, however, the question for the Court is whether the defendant is manufacturing, selling, or distributing the product, no matter how immovably and permanently affixed to the defendant's premises or attractive to the defendant's customers the product may be. Every New Jersey court to consider that question has found that the provision of access to a product in the context of a larger business enterprise on the premises does not constitute selling the product under the NJPLA. Plaintiff's opposition therefore fails to raise any issue of law, which would merit this Court's dissent from the unanimous body of precedent holding that Defendant Six Flags is not a "product seller" subject to liability under the NJPLA. Count I, as raised against Defendant Six Flags, is, therefore, dismissed with prejudice.

B.  Count IV Against Six Flags

It is unclear from the allegations in Plaintiff's Amended Complaint how many causes of action Plaintiff intended to raise in Count IV. Reading the Amended Complaint as broadly as possible in favor of the non-moving party, the Court can discern four distinct claims: (i) an action for noncompliance with the reporting requirements of the Safety Act; (ii) a common law action for fraudulent concealment; (iii) a common law action for intentional or negligent infliction of emotional distress; and (iv) a common law action for punitive damages — possibly in conjunction with any or all of the prior three actions. As the parties have briefed Six Flags' motion to dismiss Count IV on all available bases, the Court will address each in turn.

1.  The Safety Act

In paragraphs 27 through 34 of the Amended Complaint, Plaintiff details Defendant Six Flags' alleged failure to comply with the Carnival–Amusement Rides Safety Act, *N.J.S.A.* 5:3–31 to 59. Defendant Six Flags moves to dismiss on the grounds that the Safety Act does not provide Plaintiff with a private cause of action.

Plaintiff alleges that she submitted an incident report and provided notice to Defendant Six Flags after G.T. was allegedly injured riding El Toro, as required under N.J.S.A. 5:3-57(a). Am. Compl., ¶ 27. Plaintiff alleges that, despite having alerted Six Flags to the incident, Six Flags failed to notify the State of New Jersey of Plaintiff's incident report, as required under N.J.S.A. 5:3-39, or to perform its own investigation and draft its own incident report to be filed with the State, as required by N.J.S.A. 5:3-47. *Id.* at ¶¶ 31-32. Plaintiff characterizes this behavior as in violation of state law and a "cover up," designed to harm Plaintiff's ability to prosecute her claims. *Id.* at ¶¶ 33-34. As a threshold matter, the Court must therefore address Plaintiff's implicit contention that Defendant's alleged failure to comply with the reporting

requirements of the Safety Act provides Plaintiff with a private right of action to bring a claim against Defendant Six Flags. N.J.S.A. 5:3-47 provides that

> It shall be the duty of every owner and ride operator to report immediately, on a form to be provided by the department, any accidents and resulting injuries or fatalities incurred during the operation of any carnival-amusement ride, other than minor incidents, as defined by rule, or any mechanical malfunction of any ride while in use necessitating suspension of operation for diagnostic or corrective work, and to cease operation of any ride whose breakdown or malfunction causes a fatality or serious injury to any person, subject to rules and regulations promulgated by the department.

N.J.S.A. 5:3-47. A rider claiming injury is entitled to a copy of the accident report, to be furnished by the Department of Labor. N.J.S.A. 5:3-57(c).

Contrary to Plaintiff's apparent position, the New Jersey Supreme Court has held that these provisions of the Safety Act do not give rise to a private right of action for injured amusement park goers. *Steinberg v. Sahara Sam's Oasis, LLC*, 226 N.J. 344, 360 (2016) ("We reject plaintiff's implied argument that a violation of the Carnival–Amusement Rides Safety Act (the Safety Act), *N.J.S.A.* 5:3–31 to –59, standing alone, gives rise to a private right of action."). Instead, that Court has explained that the amusement park operator's violation of a statutory duty of care imposed by the Safety Act, while not independently actionable, may be admissible as evidence of negligence. *Id.* at 363 ("In sum, in given circumstances, 'the violation of a statutory duty of care' may be admissible as evidence of negligence. In this case such evidence is permissible because the aggregation of alleged negligent acts or omissions may be considered in determining whether Sahara Sam's conduct reached the level of gross negligence." (quoting *Waterson v. Gen. Motors Corp.,* 111 *N.J.* 238, 263, 544 *A.*2d 357 (1988))). This Court therefore finds that Plaintiff cannot state a claim against Defendant Six Flags for Six Flags' alleged failure to comply with the Safety Act. This finding, however, does not preclude Plaintiff from relying upon those allegations in support of some other recognized cause of action.

2. Fraudulent Concealment

Six Flags also moves to dismiss Count IV to the extent raised as a claim for fraudulent concealment. Spoliation "is the term that is used to describe the hiding or destroying of litigation evidence, generally by an adverse party." *Rosenblit v. Zimmerman*, 166 N.J. 391, 400-01 (2001). In order to remedy spoliation, a litigant is allowed to file a separate tort action for fraudulent concealment against an adversary that hides or destroys evidence during or in anticipation of litigation. *See id.* at 403, 406-07; *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 320 (3d Cir. 2014) ("New Jersey permits plaintiffs to recover in an independent action for harm caused in a prior proceeding by an adversary's spoliation."). In order to prove fraudulent concealment, the plaintiff must establish five elements:

(1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;

(2) That the evidence was material to the litigation;

(3) That plaintiff could not reasonably have obtained access to the evidence from another source;

(4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation;

(5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

*Rosenblit*, 166 N.J. at 406-07. In addition, when the spoliation is discovered during the pendency of the litigation, the court is empowered to make use of an adverse inference or order discovery sanctions to remedy spoliation. *See id.* at 401-03; *see also Tartaglia v. UBS PaineWebber, Inc.*, 197 N.J. 81, 119 (2008). The purpose of these remedies "is to make whole, as nearly as possible,

the litigant whose cause of action has been impaired by the absence of crucial evidence; to punish the wrongdoer; and to deter others from such conduct." *Rosenblit*, 166 N.J. at 401.

Rule 9(b) applies to Plaintiff's claim for fraudulent concealment. *See Williams v. BASF Catalysts LLC*, No. 11-1754, 2016 WL 1367375, at *8 (D.N.J. Apr. 5, 2016) (applying Rule 9(b) to a claim for fraudulent concealment). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must state the circumstances of the alleged wrongdoing with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged. *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). However, "[c]ourts must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks and citation omitted).

Here, any claim for fraudulent concealment is either inadequately pleaded or clearly premature. Plaintiff alleges that Six Flags "covered up the incident, covered up the severity of [G.T.'s] injury and intentionally did not perform an investigation and intentionally did not file the appropriate paperwork under New Jersey law." Am. Compl. ¶ 33. Plaintiff characterizes this conduct as a failure to maintain or investigate evidence of Plaintiff's injuries. *Id.* at ¶ 34. To the extent that Plaintiff seeks to allege that Defendant Six Flags destroyed or failed to maintain evidence prior to the initiation of litigation in this matter, her allegations are bare, legal conclusions, without factual support. The only factual allegation raised is that Six Flags did not file an accident report with the State concerning the injuries suffered by G.T. From this alone, Plaintiff seeks to infer Six Flags' malicious intent not to collect or preserve evidence of any incident involving G.T. Plaintiff presents no law giving rise to such a presumption.

To the extent that Plaintiff seeks to allege that Defendant Six Flags has failed to provide to Plaintiff any evidence of the investigation, or lack thereof into the incident involving G.T. on El Toro, such allegations are premature before the exchange of discovery. *See Huzinec v. Six Flags Great Adventure, LLC*, No. CV162754FLWDEA, 2017 WL 44850, at *6–7 (D.N.J. Jan. 3, 2017) (dismissing Plaintiff's fraudulent concealment claim, without prejudice, as premature, where "[t]o the extent that Plaintiff intended to allege that Defendants have destroyed evidence prior to the start of litigation, Plaintiff simply has not pled Defendants' concealment in that regard with particularity[;] [and] [t]o the extent Plaintiff alleges that Defendants have not turned over the evidence that Plaintiff sought prior to the filing of the Complaint, Plaintiff has failed to allege any legal obligation on the part of Defendants to fulfill Plaintiff's requests for evidence outside of the discovery process."). Accordingly, Plaintiff's claim for fraudulent concealment is dismissed without prejudice as inadequately pleaded and premature.

3. Intentional or Negligent Infliction of Emotional Distress

Six Flags next moves to dismiss Count IV of the Amended Complaint to the extent it was intended to raise claims for intentional or negligent infliction of emotional distress. Plaintiff alleges that "plaintiff . . . has sustained severe emotional distress which is compensable under New Jersey law." Am. Compl., ¶ 37. To plead a claim for intentional infliction of emotional distress under New Jersey law, a plaintiff must allege four elements. "Initially, the plaintiff must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988) (citations omitted). *"Second, the defendant's conduct must be extreme and*

outrageous. The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citations omitted). "Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress." *Id.* (citations omitted). "Fourth, the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure." *Id.* (citations omitted). A claim for negligent infliction of emotional distress similarly requires a plaintiff to plead four elements: "(1) the defendant's negligence caused the death of, or serious physical injury to, another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress." *Jablonowska v. Suther*, 195 N.J. 91, 103–04, 948 A.2d 610, 617–18 (2008) (citations omitted). For both types of claims, "[s]evere emotional distress means any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so, including . . . posttraumatic stress disorder." *Taylor v. Metzger*, 152 N.J. 490, 515, 706 A.2d 685, 697 (1998) (internal quotation omitted). "It is not enough to establish that a party is acutely upset by reason of the incident. In order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae." *Aly v. Garcia*, 333 N.J. Super. 195, 204, 754 A.2d 1232, 1236–37 (App. Div. 2000). "The genuineness and severity of emotional distress can present threshold questions of law." *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 430, 561 A.2d 1122, 1128 (1989). "Thus, the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved." *Buckley*, 111 N.J. at 367 (citation omitted).

Here, the allegations of emotional distress are clearly insufficient to state a cause of action under New Jersey law. The sole allegation of emotional distress in the Amended Complaint comprises one sentence: "[t]he plaintiff has been seriously permanently injured and has sustained severe emotional distress which is compensable under New Jersey law." Am. Compl., ¶ 37. There are no allegations establishing the requisite severity of distress necessary for a cause of action under either type of action under New Jersey law. Any such claim for intentional or negligent infliction of emotional distress is therefore dismissed, without prejudice. This ruling, however, does not restrict Plaintiff's ability to seek recovery for emotional distress as an element of damages on Plaintiff's surviving negligence claims.

4. Punitive Damages

Having already determined that Plaintiff fails to state a substantive cause of action in Count IV, no consideration of Plaintiff's claim for punitive damages in her prayer for relief in Count IV is required. *O'Connor v. Harms*, 111 N.J. Super. 22, 30, 266 A.2d 605, 609 (App. Div. 1970) ("punitive or exemplary damages will not be awarded unless there is an independent cause of action for compensatory damages"). Nevertheless, even to the extent that Plaintiff were to plead some substantive cause of action in Count IV for which punitive damages were available, those damages would be governed by the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9 *et seq.*, and Plaintiff's allegations in the Amended Complaint would be insufficient to sustain a claim under the standards set forth therein.

To establish a claim for punitive damages under the Punitive Damages Act, a plaintiff must prove, "by clear and convincing evidence, that . . . the defendant's acts or omissions . . . were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15–5.12. "Actual

malice" is defined as "an intentional wrongdoing in the sense of an evil-minded act." N.J.S.A. 2A:15–5.10. "Wanton and willful disregard" is defined as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." *Id.* Negligent, even grossly negligent, conduct cannot form the basis of a punitive damages claim. *Smith v. Whitaker*, 160 N.J. 221, 242 (1999). "There must be circumstances of aggravation or outrage, which may consist of such a conscious and deliberate disregard of the interests of others that the [defendant's] conduct may be called wanton and willful." *Dong v. Alape*, 361 N.J. Super. 106, 116 (App. Div. 2003). This "standard can be established if the defendant knew or had reason to know of circumstances which would bring home to the ordinary reasonable person the highly dangerous character of his or her conduct." *Id.* at 116–17 (citing *McLaughlin v. Rova Farms, Inc.*, 56 N.J. 288, 306 (1970)).

The Punitive Damages Act further instructs that:

> In determining whether punitive damages are to be awarded, the trier of fact shall consider all relevant evidence, including but not limited to, the following:
>
> (1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct;
>
> (2) The defendant's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct;
>
> (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and
>
> (4) The duration of the conduct or any concealment of it by the defendant.

N.J.S.A. 2A:15-5.12(b). These factors are non-exclusive. *See Pavlova v. Mint Management Corp.*, 375 N.J. Super. 397, 404 (App. Div. 2005). Overall, courts have described the punitive damages standard as a strict one; punitive damages are limited to only "exceptional cases." *Id.*; *see also Dong*, 361 N.J. Super. at 116 (noting that defendant's conduct must be "particularly egregious"). Moreover, because punitive damage awards are not designed to

compensate plaintiffs, an award does not depend upon the extent of injury suffered. *See Smith*, 160 N.J. at 225.

Here, Plaintiff has not alleged that Defendants acted with actual malice. Nor does the Amended Complaint contain any factual allegations to support a finding that Defendants acted with wanton or willful disregard of persons who could foreseeably be harmed by Defendants' conduct. Count IV merely alleges that Defendant Six Flags failed to comply with the Safety Act *after* minor G.T. had already been injured on El Toro. From this single act of alleged statutory noncompliance, Plaintiff would have the Court infer a "cover up" and malicious intent by Six Flags. Such rank speculation is unwarranted. A bare statutory violation alone, consisting of a failure to report an accidental injury, without more does not establish the added element of egregious conduct necessary for the Court to award punitive damages. *See Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1034 (D.N.J. 1995) ("[A]n award of punitive damages requires a showing of culpability in excess of that needed to state the bare bones elements of the [claim]."). Therefore, because Plaintiff has failed to state any substantive violation in Count IV for which punitive damages would be available, and because Plaintiff has failed to allege any facts showing that Defendants acted with "actual malice" or "wanton and willful disregard," Plaintiff's claims for punitive damages are dismissed, without prejudice.

C. Count I, NJPLA Claim Against Intamin

1. Amended Complaint

Plaintiff brings claims against Defendant Intamin under all three causes of action provided for under the NJPLA, namely, claims for design defect, manufacturing defect, and warnings defect. *Roberts v. Rich Foods, Inc.,* 139 N.J. 365, 375, 654 A.2d 1365 (N.J.1995); *Dziewiecki v. Bakula,* 361 N.J. Super. 90, 97–98, 824 A.2d 241 (App. Div. 2003). The standard

of liability for each is that the product "was not reasonably fit, suitable or safe for its intended purpose." *Cornett v. Johnson & Johnson,* 414 N.J. Super. 365, 998 A.2d 543 (App. Div. 2010). To prove a defect, a plaintiff must be able to show that: (1) the product was defective; (2) the defect existed when the product left the hands of the defendant; (3) the defect proximately caused injuries to the plaintiff; and (4) the injured plaintiff was a reasonably foreseeable user. *Myrlak v. Port Auth. of New York & New Jersey*, 723 A.2d 45, 52 (N.J. 1999).

"To prove both the existence of a defect and that the defect existed while the product was in the control of the manufacturer, a plaintiff may resort to direct evidence, such as the testimony of an expert who has examined the product, or, in the absence of such evidence, to circumstantial proof." *Id.* at 52 (citing *Scanlon v. General Motors Corp.,* 65 N.J. 582, 591, 326 A.2d 673 (1974)). A plaintiff may also establish a defect by "negat[ing] other causes of the failure of the product for which the defendant would not be responsible, in order to make it reasonable to infer that a dangerous condition existed at the time the defendant had control [of the product]." *Id.* at 53 (citing *Scanlon,* 65 N.J. at 593–94, 326 A.2d 673). "'[T]he injured plaintiff is not required to prove a specific manufacturer's defect.'" *Mendez v. Shah*, 28 F. Supp. 3d 282, 297 (D.N.J. 2014) (quoting *Id.* at 52 (citing *Moraca v. Ford Motor Co.,* 66 N.J. 454, 458, 332 A.2d 599 (1975))). "Proof that a product is not fit for its intended purposes 'requires only proof . . . that 'something was wrong' with the product.' " *Id.* (citing *Scanlon,* 65 N.J. at 591, 326 A.2d 673). However, the "mere occurrence of an accident and the mere fact that someone was injured are not sufficient to demonstrate the existence of a defect." *Id.*

In addition to the shared, general standards, above, each of the three theories of liability under the Act imposes its own additional pleading requirements. To establish a prima facie case of design defect, the plaintiff must prove the availability of a technologically feasible and

practical alternative design that would have reduced or prevented the plaintiff's harm without substantially impairing the reasonably anticipated or intended function of the product. *Cavanaugh v. Skil Corp.,* 164 N.J. 1, 5, 751 A.2d 518 (2000) (internal quotations omitted); *see also Lewis v. Am. Cyanamid Co.,* 155 N.J. 544, 571, 715 A.2d 967 (1998) ( "Plaintiffs who assert that the product could have been designed more safely must prove under a risk-utility analysis the existence of an alternative design that is both practical and feasible."). At the pleading stage, the courts in this District have, in practice, implemented this burden by observing that "[t]hough there is no 'per se rule that Plaintiffs must, under all circumstances, provide a reasonable alternative design,' a plaintiff must plead either that the product's risk [of harm] outweighs its [utility], or that an alternate design exists, in order to state a claim for a design defect under the Product Liability–Act." *Mendez v. Shah,* 28 F. Supp. 3d 282, 297–98 (D.N.J. 2014) (quoting *Schraeder v. Demilec (USA) LLC,* No. 12–cv–6074, 2013 WL 5770670, at *2 (D.N.J. Oct. 22, 2013)).

By contrast, a manufacturing defect exists if a product "deviated from the design specification, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J.S.A. § 2A:58C-2(a). "To determine whether a product contains a manufacturing defect, the 'product may be measured against the same product as manufactured according to the manufacturer's standards.'" *Mendez*, 28 F. Supp. 3d at 298 (quoting *Mickens v. Ford Motor Co.,* No. 10–cv–05842, 2011 WL 3444055, at *3 (D.N.J.2011) (citing *Navarro v. George Koch & Sons, Inc.,* 211 N.J. Super. 558, 512 A.2d 507, 517 (1986))). "If the particular product used by the plaintiff fails to conform to those standards or other units of the same kind, it is a manufacturing defect." *Id.* (internal marks omitted).

Finally, "[a] manufacturer is liable for harm caused by a failure to warn if the product does not contain an adequate warning or instruction." *Sich v. Pfizer Pharm.*, No. 117CV02828RBKKMW, 2017 WL 4407930, at *2 (D.N.J. Oct. 4, 2017) (citing N.J.S.A. § 2A:58C-4). A warning is adequate if it is "one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product." N.J.S.A. § 2A:58C-4; *Banner v. Hoffman-La Roche Inc.*, 891 A.2d 1229, 1236 (N.J. Super. App. Div. 2006) (*cert. denied*, 921 A.2d 447 (N.J. 2007)).

Here, although Plaintiff's Amended Complaint asserts all three causes of action under the NJPLA, *see* Am. Compl., ¶ 14-15 (manufacturing and design defect), ¶ 16 (failure to warn), ¶ 17 (manufacturing defect), there are no factual allegations supporting a claim of a design defect, manufacturing defect, or failure to provide adequate warning. Beginning with the last, there are no allegations concerning what warning was provided, what warning would have been provided by a reasonably prudent person in the same circumstances, or even what was the nature of the danger posed by El Toro for which warning was required. Plaintiff's failure to warn claim is therefore clearly inadequately pleaded and is dismissed, without prejudice.

Reading Plaintiff's Amended Complaint liberally, there is only one factual allegation which is not a pure conclusion of law regarding Plaintiff's claims of manufacturing and design defects. Plaintiff asserts that "[t]he El Toro ride as designed and constructed was to be a smooth, safe ride but was exactly the opposite, rough and bumpy." Am. Compl., ¶ 14. Other than this allegation, Plaintiff merely repeats that the design and manufacture of El Toro were and are "defective," with the specific design or manufacturing defects, or even circumstantial evidence suggesting the existence of the same, left unpled. The assertion that a rollercoaster ride was

"rough and bumpy" is plainly inadequate to provide the basis of a claim that the rollercoaster was defectively designed or manufactured. Plaintiff's NJPLA claims against Defendant Intamin for design and manufacturing defects are therefore also dismissed without prejudice as inadequately pleaded.

2. Leave to Amend

Once more than 21 days have passed since the filing of a defendant's responsive pleading, a plaintiff may amend its pleadings "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Although a court should grant such leave freely when justice so requires, a court may deny leave to amend when such amendment would be futile." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (citing *Arthur v. Maersk, Inc.,* 434 F.3d 196, 204 (3d Cir. 2006)). "Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." *Id*. (citing *Travelers Indem. Co. v. Dammann & Co.,* 594 F.3d 238, 243 (3d Cir. 2010)). Perhaps acknowledging the clear deficiency of her existing pleadings, Plaintiff seeks leave to amend her Amended Complaint to replead her NJPLA claim to supplement each of her three theories of liability. Specifically, retaining all other allegations in her Amended Complaint, Plaintiff seeks to add the following language in her proposed Second Amended Complaint:

> 14. . . . More specifically, upon information and belief, said ride was defective in that the seating for said ride was improperly constructed, the materials were not suitable to protect patrons including patrons such as the minor plaintiff herein, the seat back was not high enough to prevent plaintiffs' [sic] head from being jolted back due to the strong forces of the roller coaster [sic], causing her to hit her head and neck on the back of the seat. The coaster was designed and constructed with [an] improper containment system for a patron of the minor plaintiff's size and weight, subjecting her to excessive movement and there were insufficient restraints subjecting the minor plaintiff to excessive motion and movement inside the roller coaster [sic] car and such other defects as investigation of the roller coaster [sic] will reveal.
>
> . . .

15. . . . (same language as ¶ 14 above)

. . .

16. El Toro lacked proper warnings . . . of the dangers of the product . . . including the excessive motion and movement that the minor plaintiff would have been subjected to while in the car.

Proposed Second Amended Complaint ("SAC"), ¶¶14-16. As a threshold matter, although the bulk of Plaintiff's proposed additions are appended to both the design defect and manufacturing defect claims in the Proposed Second Amended Complaint, this new paragraph contains no allegations relevant to a manufacturing defect. Plaintiff complains of aspects of the rollercoaster's design which allegedly led to G.T.'s injuries including the seat back and seat restraints, but makes no mention of any flaws or failings in the manufacturer's implementation of that design. *Mendez*, 28 F. Supp. 3d at 298 ("To determine whether a product contains a manufacturing defect, the 'product may be measured against the same product as manufactured according to the manufacturer's standards.'" (citation omitted)). The only allegation which could arguably address the manufacture rather than the design of El Toro is Plaintiff's claim that the "materials" used in the ride's "improper" construction "were not suitable to protect patrons." SAC, ¶¶ 15. This allegation, however is vague and conclusory, and is most naturally read, in any case, to refer to the later design flaws Plaintiff purports to identify. The Proposed Second Amended Complaint would therefore still fail to state a claim for manufacturing defect, even if the proposed amendment were permitted.

The additional clause appended to Plaintiff's failure to warn claim is also inadequate to state a claim. Firstly, Plaintiff's characterization of the "motion and movement" inherent in the operation of a rollercoaster as "excessive" is conclusory and unsupported, except by the alleged fact of G.T.'s injury itself. Plaintiff may not rely upon *res ispa loquitor* to plead that the warning given was inadequate. *Myrlak*, 157 N.J. at 98 ("The mere occurrence of an accident and the mere

fact that someone was injured are not sufficient to demonstrate the existence of a defect."). Secondly, Plaintiff alleges no facts concerning how the warning given to riders of Defendant Six Flags' *rollercoaster* diverged from the adequate warning a reasonably prudent person would have provided "taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used." N.J.S.A. § 2A:58C-4. Significant "motion and movement" are inseparable from the operation of a rollercoaster such that Plaintiff's alleged additional warning is not distinguishable from ordinary, common knowledge. The Proposed Second Amended Complaint would therefore still fail to state a claim for failure to warn, even if the proposed amendment were permitted.

Plaintiff's proposed new allegations concerning a design defect present a somewhat closer question, but remain inadequate under New Jersey law. Although Plaintiff now seeks to plead which elements of El Toro's existing design were problematic and allegedly caused G.T.'s injuries, Plaintiff still fails to allege an available, technologically feasible, and practical alternative design that would have reduced or prevented the plaintiff's harm without substantially impairing the reasonably anticipated or intended function of the product. *Cavanaugh,* 164 N.J. at 5. For example there is no allegation that other, comparable rollercoasters exist in which adequate neck and head support and body restraints are provided. Plaintiff similarly fails to plead any facts which could be weighed in a future risk-utility analysis of whether the risks inherent in El Toro's design outweigh it benefits or that any proposed alternative design would preserve El Toro's functionality. Thus, although Plaintiff's proposed Second Amended Complaint improves over the Amended Complaint in its allegations of design defect, it nevertheless would be futile to permit Plaintiff to file it in its current form. The Court therefore denies Plaintiff's Cross-Motion for leave to amend to file the proposed Second Amended Complaint.

Mindful, however, that the Third Circuit has adopted a liberal policy in favor of permitting pleading amendments to ensure that "a particular claim will be decided on the merits rather than on technicalities," the Court will allow Plaintiff to file a motion, seeking leave to amend with a new Second Amended Complaint that cures the pleading deficiencies identified in this Opinion, within thirty days. *Dole v. Arco Chem. Co.,* 921 F.2d 484, 487 (3d Cir. 1990). Plaintiff is advised to carefully craft her allegations to comport with the requirements of New Jersey law.

D. Count II, III, and V Against Intamin

Defendant Intamin also moves to dismiss Counts II, III, and V of the Amended Complaint as subsumed into Plaintiff's Count I, NJPLA claim. The NJPLA "'established the sole method to prosecute a product liability action' such that 'only a single product liability action remains.'" *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 596 (D.N.J. 2015) (quoting *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398–99, (App. Div. 1991)). Under the NJPLA, a product liability action is defined as "any claim or action brought by a claimant *for harm caused by a product*, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." *N.J.S.A.* 2A:58C–1(b)(3) (emphasis added). In determining whether a tort claim is subsumed under the PLA, the New Jersey Supreme Court has observed that "[t]he essential question is whether plaintiffs' effort to recover . . . damages is limited by the definition of 'harm' in the PLA." *Sinclair v. Merck & Co.*, 195 N.J. 51, 62, 948 A.2d 587, 593 (2008). "Harm" is defined in the PLA as

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph.

*N.J.S.A.* 2A:58C–1(b)(2). "In short, those former common-law causes of action . . . have merged into a single cause of action under the PLA," and thus are no longer recognized "as viable separate claims for harm deriving from a defective product." *Clements*, 111 F. Supp. 3d at 596. Courts in this Circuit therefore consistently dismiss product liability claims based on those common-law theories. *Id.* at 597 n. 5 (collecting cases).

Intamin's motion to dismiss Counts II, III, and V of the Amended Complaint as raised against Intamin will therefore be granted, because common law actions for negligence (Counts II and III) and loss of consortium (V) are subsumed under the NJPLA when raised against a product manufacturer, and seeking damages falling within the NJPLA's definition of harm. Alternatively, in opposition, Plaintiff also appears to concede that the negligence counts (Counts II and III) are directed to the conduct of defendant Six Flags alone — Count II alleges negligent maintenance and Count III alleges negligent instruction and training of ride operators, conduct in which Intamin, as El Toro's manufacturer and designer was undisputedly not involved. ECF No. 18, p. 7-8. Although there is some confusion between the parties concerning Count V, *see id.*, p. 8-9, as noted above, the law is clear that no independent claim for loss of consortium is available against a defendant covered by the NJPLA. The NJPLA subsumes all actions "irrespective of the theory underlying the claim" for harms enumerated in the statute arising from an allegedly defective product. *N.J.S.A.* 2A:58C–1(b)(3). Loss of consortium is among the harms enumerated in the NJPLA, *N.J.S.A.* 2A:58C–1(b)(2), and so Plaintiff's common law action, in her own right, seeking to recover for that harm in the form of the lost services of her minor daughter, G.T., is subsumed by the statute. *See, e.g., Chester v. Boston Sci. Corp.*, No. CV 16-02421 (FLW), 2017 WL 751424, at *4 (D.N.J. Feb. 27, 2017) ("Count V explicitly seeks damages only for loss of consortium. . . . As th[is] harm[] fall[s] within the PLA, . . . [and Count] V . . . allege[s] only

common law causes of action, [it is] therefore subsumed by the PLA."). Counts II, III, and V as raised against Defendant Intamin are therefore dismissed as subsumed within Plaintiff's Count I claim under the NJPLA, which this Court has already dismissed without prejudice.

E.  Count IV Against Intamin

Finally, although the parties dispute semantics in briefing, it is clear to the Court that Plaintiff concedes that her claim for punitive damages along with the accompanying allegations in Count IV were not directed at Defendant Intamin. *See* Plaintiff's Cross-Motion, ECF No. 18, p. 10 ("The plaintiff has alleged punitive damages in this case against Six Flags Great Adventure. Movants [Intamin] acknowledge that this Count does not appear to have been directed against them."). Because Count IV of the Complaint nevertheless uses the ambiguous term "defendants" in its allegations, without specifying whether Defendant Intamin is included within such term, the Court will also grant Defendant Intamin's motion to dismiss this Count with prejudice as unopposed. Even if Plaintiff had opposed the motion, dismissal would still be appropriate because there are no allegations of any specific conduct by Intamin in Count IV, which could serve as the basis for any cause of action.

IV. CONCLUSION

For the foregoing reasons, Defendant Six Flags' Partial Motion to Dismiss the Amended Complaint of Plaintiff Tafaro and Defendant Intamin's Motion to Dismiss the Amended Complaint are granted. Accordingly, as raised against Defendant Six Flags, Count I of the Amended Complaint is dismissed with prejudice and Count IV is dismissed without prejudice. All claims in the Amended Complaint are dismissed as raised against Defendants Intamin, Intamin, Ltd., and Interide, LLC: Count I is dismissed without prejudice; Counts II, III, and V are dismissed with prejudice as subsumed by the NJPLA; and Count IV is dismissed with

prejudice. Plaintiff's Cross-Motion for leave to file the proposed Second Amended Complaint is denied. Plaintiff may file a motion seeking leave to file a new Second Amended Complaint, consistent with the rulings in this Opinion, within thirty days. Because Defendant Six Flags has not moved to dismiss Counts II, III, or V, this case shall remain open even if Plaintiff elects not to seek leave to file a Second Amended Complaint. An appropriate Order to follow.

Date:   March 29, 2018

_____*/s/ Freda L. Wolfson*_____
FREDA L. WOLFSON, U.S.D.J.