IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

SHARON TAFARO, INDIVIDUALLY AND AS
GUARDIAN AD LITEM FOR MINOR GIANA
TAFARO

        Plaintiffs,

Vs.

SIX FLAGS GREAT ADVENTURE LLC,
INTAMIN,     ROCKY     MOUNTAIN
CONSTRUCTION      JOHN DOES 1-100,
(said names being fictitious), INTERIDE
LLC, INTAMIN LTD
        Defendants.

CIVIL ACTION

NO. 3:17-cv-05607-FLW-LHG

SECOND AMENDED COMPLAINT
AND JURY DEMAND

The plaintiffs, Sharon Tafaro Individually and as Guardian Ad Litem for minor, Giana Tafaro, residing in Ocean County New Jersey States by way of complaint against the defendants as follows:

## BACKGROUND

1.  On or about July 12, 2016 the following defendants were corporations or limited liability companies, licensed to do business or doing business in the state of New Jersey in the state of New Jersey: Six Flags Great Adventure LLC,  Intamin, Intamin Ltd., and Interide LLC.,  Rocky Mountain Construction and John Does 1-100 (said names being fictitious).

2.  Six Flags Great Adventure LLC, is a corporation and/or limited liability Company located in New Jersey and licensed to do business in New Jersey and/or John Does (1-40) (fictitious names) were in control of and/or responsible for the park premises including,

but not limited to, El Toro rollercoaster, the maintenance of same and for training personnel to properly and safely operate the ride.

3.      Intamin, Intamin, Ltd. And Interide, LLC., (hereinafter referred to as "Intamin") and John Does (41-60) (fictitious names) are entities that manufactures, designs and distributes roller coasters including the El Toro.

4.      Rocky Mountain Construction and John Does (61-100) (fictitious names) are entities that install roller coasters and roller coaster tracks, including the El Toro, located at Six Flags Great Adventure in Jackson, New Jersey.

5.      The following is from Wikipedia

> **El Toro, a Spanish term meaning The Bull, is a wooden roller coaster at Six Flags Great Adventure in Jackson, New Jersey. Designed by Intamin of Switzerland, it opened to the public on June 11, 2006. Intamin also worked with members of Rocky Mountain Construction to build the ride. When it opened, it had the steepest drop of any wooden roller coaster in the world at 76 degrees, until the record was broken by T Express in 2008 by one degree. Overall, its structure height of 181 feet (55 m) is ranked fourth, its drop height of 176 feet (54 m) is ranked second, and its top speed of 70 miles per hour (110 km/h) is ranked fourth among all wooden roller coasters in the world. It was also the first wooden roller coaster to use a cable lift as opposed to the traditional chain lift.**

6.      El Toro suffered a malfunction with the lift motor in early August 2013. The motor was sent to Maryland to be fixed. El Toro re-opened on August 30, after it had been down for several weeks.

7.      Defendant(s) Intamin's first pre-fabricated wooden roller coaster, Colossos at Heide Park in Germany, has been shut down for the 2016 and 2017 seasons, and its future remains in doubt. Due to this, another of Intamin's pre-fabricated wooden coasters, T Express at Everland in South Korea, has also been closed for the 2017 season, leaving

some to speculate the El Toro will also close at a date in the near future.  **See Exhibit "A".**

8.     On or about July 12, 2016 the minor plaintiff was legally on the premises of the defendant having paid admission and entered the park and entered on to the ride known as El Toro.

9.     The plaintiff, while on the ride, sustained serious and permanent injuries.

10.     It is believed and asserted that the nature and extent of her injury was a direct and proximate result of various defects in the roller coaster El Toro and/or improper installation and/or improper maintenance of same and/or improper training of the staff at Six Flags Great Adventure LLC.

## COUNT ONE

1.     Plaintiffs incorporate by reference herein the Statement of Facts set forth above.

2.     At all times relevant to this action, defendant Intamin and John Does (41-60) (names being fictitious) designed, manufactured, distributed. sold and installed roller coasters, including the El Toro roller coaster located at Six Flags Great Adventure which is the subject matter of the within lawsuit.

3.     As the manufacturer, distributor and the seller of the product, defendant Intamin, is liable for injuries caused by the product which is defectively designed, under the New Jersey Products Liability Act N.J.S.A. 2A:58C-2 et. seq.

4.     Defendant Intamin and John Does (41-60) (fictitious names) manufactured, designed, distributed and sold the El Toro product which was not reasonably fit and suitable for its intended use and which product was defectively designed and which

design defects rendered it unreasonably dangerous to the members of the public, including but not limited to the plaintiff, which defects were the proximate cause of plaintiff's injuries.

5.        The El Toro roller coaster was defectively designed in that the design of its interior compartment and seating did not protect the patron from being thrown about inside the car while on the ride. More specifically, the El Toro was defective in that the seating being utilized for patrons for said ride, was improperly designed. The materials were not suitable or soft enough to protect patrons, including patrons such as the minor plaintiff herein, from injury from striking same, the back seat was not high enough and lacked sufficient head and neck restraints to prevent plaintiff's head from being jolted back due to strong forces of the roller coaster, causing her to hit her head and neck on the back of the seat. In addition, the El Toro roller coaster was designed with an improper containment system, seat belt and lap bar, for a patron of plaintiff's minor size and weight, subjecting plaintiff to excessive movement motion inside the roller coaster car and such other defects as will be developed through discovery.

6.        At the time the roller coaster was manufactured, designed, sold and distributed there were technologically feasible and practical alternative designs that would have reduced or prevented the plaintiff's harm, without substantially impairing the reasonably anticipated or intended function of the product. At the time of the subject incident, there were other comparable roller coasters being manufactured with better and softer materials for the seats. There were seats that were higher with better padding and more sufficient neck and head support which would have prevented the plaintiff from sustaining the head injury that she sustained in the subject accident. In addition, the restraint system

in this roller coaster, the lap bar and seat belt, allowed the plaintiff to not only move forward and backward, but from side to side. There were alternative designs being utilized at the time of manufacture in other comparable roller coasters and it is believed that defendant Intamin also utilized such alternate designs in other roller coasters it manufacturerd, such as over the shoulder seat belts and/or harnesses or restraints that protect the full body of the plaintiff and would reduce substantially the movement of the plaintiff inside the roller coaster.

7.        The proposed alternative designs would certainly preserve El Toro's functionality  while providing more suitable and a safer environment for patrons, such as the plaintiff. Said design was not only feasible from a manufacturing standpoint, but economically feasible as well. The cost of same would not outweigh the utility of the product and the roller coaster would still perform as functioned, albeit with a safer envelope within the car system and better designed seating.

8.        The El Toro roller coaster, more particularly, the interior design of the roller coaster car including the seat and restraints as outlined above, were defective in design and formulation and unreasonably dangerous when it   left the hands of the defendants Intamin and John Does (41-60) and it reached the plaintiff, the ultimate consumer without substantial alterations in said condition.

9.        The risks that were inherent in the El Toro as designed with the improper seating, the improper car containment envelope and restraint system, far outweigh its benefits for use by patrons as a roller coaster.

10.        In addition, defendants Intamin and John Does (41-60) failed to follow

standards promulgated by ATSM Standard Practice for Design of Amusement Rides and Devices, F. 2291-05 and utilized by roller coaster manufacturers in the industry. Specifically, they failed to follow standards as set forth in F:2291-05, including but not limited to sections 5.1.1.1, 5.1.1.2, 5.1.1.3, 5.1.2, 5.2.1, 6.1.1, 6.1.2, 6.3.1, 6.4.2 to 6.4.25, 6.6.1 and 7.13 and such other standards as may apply.

11.     El Toro was a defective product by which plaintiffs have a claim under the New Jersey Products Liability Act N.J.S.A. 2A:58C-1 et. seq.  Defendants  Intamin and John Does (41-60) as the manufacturer, distributor and seller of the product are therefore strictly liable in tort under N.J.S.A. 2A:58C-1 et. seq.

12.     As a direct and proximate cause of the design defects in the product as aforesaid, plaintiff sustained serious and debilitating injuries, had to seek medical attention to cure herself of said injuries, was otherwise permanently injured and disabled for which defendants are strictly liable in tort.

        **WHEREFORE** plaintiffs demand judgment against defendants Intamin and John Does (41-60) jointly, severally or in the alternative, for damages together with interest, costs of suit and attorneys fees.

## COUNT TWO

        Plaintiffs repeat and reallege each and every allegation contained in the First Count of the Complaint as if set forth at length herein.

13.     Defendants Intamin and John Does 41-60 manufactured, designed and placed upon the marketplace, the El Toro roller coaster, which contained inadequate warnings to the patrons of the El Toro located at Six Flags Great Adventure. They failed to

provide warnings a reasonable and prudent person would have provided, taking into account the characteristics of, and ordinary knowledge common to, the persons by whom the product is intended for use.

14.     In the within case, the defendants posted warning, attached hereto as **Exhibit "B"**, describing the El Toro ride as a high speed ride with sudden acceleration, steep drops and sudden stops and advises its passengers that the restraints provided must be positioned and fashioned properly and also indicates that due to  the restraints, some large guests may not be able to use the ride. It also provides that "riders must have upper body control, be able to sit up straight with their head against the seat back". However, what the warnings don't advise is that smaller patrons can be subjected to excessive movement from side to side or front and backward. While the El Toro advises that the restraints may not be proper for some larger guests, it has no warning at all about the effect of the restraints for smaller guests and does not communicate to a minor patron such as the plaintiff herein, adequate information on the dangers in the product, due to the ride's acceleration, if a patron on the ride can's sit up straight with their head against the back seat.

15.     The El Toro as manufactured, designed and distributed by Intamin and John Does (41-60) therefore lacked proper warnings and had insufficient warnings to warn users such as the plaintiff herein of the dangers of the product and the potentiality of harm that could be caused to the minor plaintiff as a result of the violent movement both side to side and front and backwards, in connection with the type and manner of restraint system that was employed in the ride.

16.     Therefore, the El Toro was a defective product when it left the hands of the defendants Intamin and John Does (41-60) based upon failure to provide adequate warning under the New Jersey Products Liability Act and said defendants are strictly liable in tort.

17.     As a direct and proximate result of the defects in the product as aforesaid, the plaintiff sustained serious debilitating injuries, had to seek medical attention to cure such injuries and was otherwise permanently disabled for which defendants are strictly liable in tort.

     **WHEREFORE** plaintiffs demand judgment against defendants Intamin and John Does (41-60) (being fictitious names) jointly, severally or in the alternative, for damages together with interest, costs of suit and attorneys fees.

**COUNT THREE**

     Plaintiffs repeat and reallege each and every allegation contained in the First and Second Counts of the Complaint as if set forth at length herein.

18.     At all times mentioned herein, defendants Six Flags Great Adventure and John Does (1-40) (being fictitious names) negligently maintained the El Toro roller coaster located at Six Flags Great Adventure in Jackson, New Jersey. As a direct and proximate result of the failure of the maintenance of same, plaintiff was caused to sustain serious and debilitating injuries, had to seek medical attention to cure said injuries and otherwise sustained permanent disabling injuries for which the defendants are responsible.

     **WHEREFORE** plaintiffs demand judgment against defendants Six Flags Great Adventure and John Does (1-40) (being fictitious names) jointly, severally or in the

alternative, for damages together with interest, costs of suit and attorneys fees.

## COUNT FOUR

Plaintiffs repeat and reallege each and every allegation contained in the First, Second and Third Counts of the Complaint as if set forth at length herein.

19.    The defendants Six Flags Great Adventure LLC., John Does (1-40) (names being fictitious) improperly operated the El Toro ride and/or failed to provide to its agents, servants, representatives and/or employees proper training, proper directions and/or proper supervision in connection with operating the El Toro, which led to the injures of the plaintiff.

20.        As a direct and proximate result of said negligence, defendants Six Flags Great Adventure LLC., and John Does (1-40) (names being fictitious) caused plaintiff to sustain serious and debilitating injuries, had to seek medical attention to cure said injuries and was otherwise permanently disabled.

WHEREFORE, plaintiffs demand judgment against the defendants Six Flags Great Adventure LLC., and John Does (1-40) (names being fictitious) jointly, severally or in the alternative for damages, together with interest, costs of suit and attorneys fees.

## COUNT FIVE

Plaintiffs repeat and reallege each and every allegation contained in the First, Second, Third and Fourth Counts of the Complaint as if set forth at length herein.

21.    Defendant Rocky Mountain Construction and John Does (61-100) (fictitious names) is an entity that participated in or completely installed the El Toro roller coaster,

including the track and all systems. Due to the negligent manner in which same was installed and/or erected by defendant Rocky Mountain Construction and John Does (61-100) (fictitious names), plaintiff herein was caused to sustain severe and debilitating injuries while riding on the El Toro roller coaster.

22.     As a direct and proximate result of the negligence of defendant Rocky Mountain Construction and John Does (61-100) (fictitious names), plaintiff sustained severe and debilitating injuries, had to seek medical attention to cure herself of said injuries and was otherwise seriously and permanently disabled.

**WHEREFORE,** plaintiffs demand judgment against the defendants Rocky Mountain Construction and Johns Does (61-100) (fictitious names) jointly, severally or in the alternative for damages, together with interest, costs of suit and attorneys fees.

## COUNT SIX

Plaintiffs repeat and reallege each and every allegation contained in the Third, Fourth and Fifth Counts of the Complaint as if set forth at length herein.

23.     Plaintiff  Sharon Tafaro is the mother and guardian of the minor plaintiff, Giana Tafaro.

24.     As a direct and proximate result of the injuries sustained by the minor plaintiff Giana Tafaro as set forth in the previous Counts of this Complaint, Sharon Tafaro has been deprived of the services of her daughter, has had to expend monies and will continue to expend monies for her medical care and treatment and has otherwise suffered damages.

**WHEREFORE,** the plaintiff Sharon Tafaro individually demands judgment against defendants Six Flags Great Adventure LLC., Rocky Mountain Construction, John Does

(1-40) (names being fictitious), John Does (61-100) (names being fictitious) jointly, severally or in the alternative, for damages together with interest, costs of the suit.

## JURY DEMAND

Plaintiff hereby demands a trial by a jury as to all issues raised in these pleadings.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the provisions of R. 4:25-4, the Court is advised that DENNIS A. DRAZIN, ESQ., is hereby designated trial counsel.

## CERTIFICATION

I hereby certify that, pursuant to R. 4:5-1(b)(2), this matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration, nor is any action or arbitration proceeding contemplated.

BY: _____
THOMAS J. DICHIARA
ATTORNEY I.D. NO. 013921975
DRAZIN & WARSHAW
25 RECKLESS PLACE
RED BANK, N.J. 07701
(732) 747-3430
tjdichiara@drazinandwarshaw.com
Attorneys for Plaintiffs

Dated:  July 24, 2018

EXHIBIT 'A'

Heide-Park

http://screamscape.com/html/heide-park.htm



Welcome To Screamscape!
If you're a theme park lover or crazy, the best thrill rides the world has to offer, you've found the right place.

From new ride announcements, construction reports and the latest rumors Screamscape always has something new to report.

G-1  0



News & Rumors

**HEIDE-PARK**
Germany
Merlin Entertainments Group

Newest Attractions:
2014 - Flug der Dämonen

2013 - Heading New

**Park News** - (3/17/17) In a somewhat shocking development Heide Park has announced that their massive Colossus wooden coaster (Intamin) will not be opening at all for the entire 2017 season. As seen on the Heide Park Deutschland site, a large darkened construction fence has already been put up, blocking all access to the ride area.

So what happened to Colossus? From what Screamscape has heard, Germany's TOV retired the coaster shut down late last summer, as the ride experience had just deteriorated to the point where it was clear something was wrong. According to one report, Colossus had simply become too rough, and not in the same way that you would expect a wooden coaster to get rough with age, but had evolved into an experience similar to having a jackhammer on your spine for the duration of the ride.

For those that may not know, Colossus represented the first version of a new experimental construction method for wooden coasters from Intamin. Instead of putting down layers of wood under the rails, these sections of the ride were each custom milled from large wooden blocks for each track section, had the custom designed rails mounted to them, and then delivered to the site ready for installation. The large wooden track sections are designed so they can be assembled together on site, almost like putting together a Lego model. (A photo showing off a couple of these can be seen here.)

The idea was that down the line, when a section of the ride was in need of re-tracking, they could simply order the specific pieces needed and then swap them out, much like you would do with a steel coaster. As Colossus is the oldest of the four Intamin Pre-Fab wooden coasters, built to open in 2001, apparently we now know just how long this new design of track will last, as we've heard that Colossus is now in need of extensive re-tracking.

So what's the problem? It seems this is going to be one hell of an expensive job, and by the time the ride was closed last season the park had already committed their 2017 budget towards building the new Ghostbusters dark ride, and did not have the funds needed to also re-track Colossus for 2017, so it is expected that the park's 2018 attraction budget will be spent on fixing Colossus at this time.

On a related note, I've also been told that T-Express at Everland in South Korea, the youngest of the four Intamin Pre-Fab coasters (opened in 2008) is now also listed as being closed at the park's website. While T-Express is probably just closed for regular maintenance, it does make me interesting in knowing how well it and the other two Intamin coasters (El Toro at Six Flags Great Adventure and Balder at Liseberg) are holding up as they age, and if any of them have had to undergo any track replacement over the years.

(8/18/16) Screamscape sources tell us that Colossus at Heide Park is closed for the rest of the season. According to our source, some major issues were discovered with the track that need to be addressed, which could involve replacing some sections of track entirely.

**2017 - Ghostbusters 5D - Confirmed** - (4/26/17) The new Ghostbusters 5D dark ride at Heide Park opened on April 11th, offering 3D imagery and ghost blasting laser pistols for those aboard the Ecto-X ride vehicle. The park sent out a great image as well showing off the great looking Ecto-X ride car.



(10/17/16) Heide Park will open a new Ghostbusters 5D attraction in 2017 according to this update. The new Ghostbusters attraction was announced on Oct. 14th at the park and described as a dark ride style experience where guests ride in an RCTO-1 car, armed with their own proton blaster to bust ghosts and their mascot Lord Explorus inside a mysterious warehouse. The park will actually put an existing structure to use to house the new dark ride inside the former Spencer Hall building that was previously being used for a LEGO show and a children's show.

**2018 - Refurbish Colossus - Rumor** - (3/17/17) The park is rumored to spend their 2018 capital budget on fixing and reopening the closed Colossus wooden coaster.

Copyright © 1996 - 2017 by Lance Hart & Screamscape.com. All rights reserved.

of 1

Exhibit A

EXHIBIT 'B'

# El Toro

## RIDE DESCRIPTION: High Thrill

A high speed ride with sudden acceleration, steep drops and sudden stops.

Must be at least 48" tall to ride even if accompanied by a parent or guardian

### Do not ride if you have any of the following conditions:

     

Recent Surgery or Illness   Heart Conditions   Neck, Back or Back Ailments   Pregnancy   High Blood Pressure or Aneurysm   Under the Influence of Drugs or Alcohol

**For your safety, you should be in good health to ride.**
Only you know your physical conditions or limitations.
If you suspect your health could be at risk for any reason, or you could aggravate a pre-existing condition of any kind, DO NOT RIDE!

## RIDE RULES

- All passenger restraints, including lap bars, shoulder harnesses, and seatbelts, must be positioned and fastened properly to allow guest to ride. Due to the restraints, some large guests may not be able to ride

- Secure all loose articles ( glasses, cell phones, hats, wallets, keys, etc.) or leave them with a non-rider.

- Cameras and video equipment are not permitted on this ride.

- Smoking is not permitted in queue line or on the ride.

- Chewing gum, candy, food and drinks are permitted in the queue line but are not permitted on the ride.

- Line jumping for any reason is cause for ejection from park.

- The park is not responsible for any personal items that are lost, damaged or stolen.

- If you are hearing impaired, ask the ride attendant for written ride instructions before boarding the ride.

- Stay seated, face forward, keep head, arms and legs inside the ride at all times.

- Hold onto the grab bar at all times.

- Strobe lights are in use at this ride.

- Prosthetics are not permitted.

- In order to ride Guests must possess one full upper extremity with a functioning hand and two full lower extremities with functioning feet.

- Riders must have upper body control and be able to sit up straight with their head against the seat back.

### N.J.S.A. 5:14A-9.33

Rider Responsibility

State law requires that each rider must obey all written warnings and directions regarding this ride and refrain from behaving in a reckless manner which may cause or contribute to injury to the rider or others. Failure to comply is a violation of law and subject to penalty under the New Jersey Code of Criminal Justice pursuant to N.J.S.A. 5:3-18.1. Violators may be subject to a fine of up to $1,000 and imprisonment of up to six months.

 Entrance located at ride exit.
Refer to Safety and Accessibility Guide for details